| | |
|---|---|
| ANN F. FELIX, <br> *Plaintiff,* <br> *v.* <br> JOHNATHAN ASELTON, <br> *Defendant.* | Civil No. 3:18cv223 (JBA) <br><br> September 18, 2019 |

**RULING GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Ann F. Felix brings a civil rights suit pursuant to 42 U.S.C. § 1983 against Defendant Newington Police Officer Johnathan Aselton in his individual capacity. ([Doc. # 1]). She alleges that she was subject to false arrest and malicious prosecution and that she was denied equal protection of the laws. Defendant now moves for a judgment on the pleadings. ([Doc. # 30]).

For the reasons that follow, Defendant's Motion for Judgment is granted.

**I. Background**

The following facts are drawn from Plaintiff's Complaint and from the public records referenced therein. Plaintiff is a female resident of Newington, Connecticut. (Compl. ¶ 3.) For seven months, she dated John Doe "on and off." (Arrest Warrant Application, Ex. A to Def.'s Mot. for J. [Doc. # 30-2] at 3.) On May 19, 2017, the couple had an argument at Plaintiff's home. (*Id.*) After Doe left Plaintiff's home, he, by his own admission, proceeded to post "five nude photos" of Plaintiff to a "closed group of 29 people on Facebook." (*Id.* at 2.)

On May 21, 2017, Defendant Officer Aselton responded to Plaintiff's harassment complaint to the Newington Police Department about Doe's publication of these photographs. (*Id.* at 1.) Plaintiff showed him the photos, in which she claims her "face was very clearly

identifiable." (Compl. ¶ 7.) Defendant then launched an investigation into a "domestic disturbance which had occurred on 05/19/17." (Arrest Warrant Application at 1.)

Defendant met with Doe on May 24, 2019 at the Newington Police headquarters. (*Id.* at 2.) Doe provided a sworn written statement, averring that Plaintiff "lunged at [him,]" "grabbed [his] right arm and scratched him," and "pushed [him]" during the argument at her home. (*Id.*) Doe stated that he bled from a "very small laceration" on his right cheek and that his "arm had scratch marks on it." (*Id.*) He showed Defendant his right arm, which had "numerous scratches and lacerations of various age," including "[o]ne small scratch in particular [that] appeared to be new." (*Id.*) Defendant took photographs of these scratches and provided Doe with victims' rights information. (*Id.*) Doe also admitted to posting nude photographs of Plaintiff on the Internet following their argument. (*Id.*)

Plaintiff subsequently provided Defendant with her own sworn written statement, which disputed Doe's version of events. (*Id.* at 3.) She stated that she "never lunged at Doe" and that she had "no idea how he may have received scratches on his arms or face." (*Id.*) She noted that "Doe works on an aircraft," where "he crawls in small spaces." (*Id.*) In addition to offering her sworn statement, Plaintiff supplied Defendant with medical documentation that she "was recovering from serious abdominal surgery" at the time of the argument as proof that she "would not have been capable of such activity." (Compl. ¶ 8.) She also showed Defendant "that her fingernails were cut extremely short" to prove that "she could not have inflicted the scratches which were alleged." (*Id.* ¶ 9.)

On May 25, 2017, Defendant completed an application for Plaintiff's arrest on charges of disorderly conduct and assault in the third degree. (*Id.* ¶ 6.) In his sworn application, Defendant described the physical evidence provided by Doe. (Arrest Warrant Application at 3.) Defendant

also stated that he "could not clearly identify Felix's face in the photos" and that "[i]t seemed as if Felix was fabricating an answer" to his questions regarding her communication with Doe. (*Id.* at 4; *see also* Compl. ¶¶ 7, 10.) The arrest warrant application otherwise repeated both sworn written statements in full, including Plaintiff's denial and her suggestion that Doe could have been injured at work. However, the application did not contain any mention of Plaintiff's medical documentation or the length of her fingernails. (Compl. ¶¶ 8, 9.)

On June 8, 2017, a Connecticut superior court signed an arrest warrant for Plaintiff on the charges requested by Defendant. (*Id.* ¶ 11.) Plaintiff was later arrested and taken into custody. (*Id.*)

On August 31, 2017, Plaintiff appeared pro se before the Connecticut superior court, (Superior Court Transcript, Ex. D to Def.'s Mot. for J. [Doc. # 30-5]), which caused her "fear, humiliation, inconvenience and emotional distress." (Compl. ¶ 12.) At the hearing, the state prosecutor entered a *nolle prosequi*, because the matter was being handled in family court, and the Judge dismissed the case at Plaintiff's request and without objection by the prosecution. (Superior Court Transcript at 2.)

On February 6, 2018, Plaintiff brought this one-count civil rights complaint pursuant to 42 U.S.C. § 1983. She alleges that Defendant, acting in his individual capacity, violated her "her right to be free from false arrest and malicious prosecution," as guaranteed by the Fourth Amendment. (Compl. ¶ 14.) She also alleges that Defendant subjected her to "disparate treatment in comparison to the male involved in the incidents, and thereby deprived [her] of equal protection of the laws in violation of the Fourteenth Amendment." (Compl. ¶ 15.)

Defendant now moves for a judgment on the pleadings on grounds that Plaintiff has failed to state a claim upon which relief may be granted. (Def's Mot. for J. at 1.) Defendant also asserts a defense of qualified immunity. (*Id.*)

## II. Discussion

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).

When determining the sufficiency of a complaint, the district court is limited "to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). A court "may also look to public records," including court filings, at this stage. *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). When a court takes judicial notice of such public records, it takes "judicial notice of the fact that [the records] . . . contained certain information, without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

### A. False Arrest and Malicious Prosecution

Plaintiff claims that Defendant violated her right to be free from unreasonable seizure by subjecting her to false arrest and malicious prosecution in violation of the Fourth Amendment.

When addressing such § 1983 claims, a court "look[s] to state and common law principles to determine the law applicable." *Davis v. Rodriguez*, 364 F.3d 424, 434 n.7 (2d Cir. 2004). "It is well-established that the existence of probable cause is a complete defense to claims of . . . false arrest[] and malicious prosecution under both federal and Connecticut law." *Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2015 WL 5306550, at *7 (D. Conn. Sept. 10, 2015); *see also Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94 (2007) ("[T]he existence of probable cause is an absolute protection against an action for malicious prosecution" (internal quotation marks omitted)); *Beinhorn v. Saraceno*, 23 Conn. App. 487, 490 (1990) (treating absence of probable cause as an element of false arrest).

Probable cause is presumed when the "arrest [is] authorized by a judicial warrant." *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019). To overcome this presumption, a plaintiff must allege "(1) that [a] supporting warrant affidavit[] 'on [its] face, fail[s] to demonstrate probable cause'; or (2) that defendant[] misled a judicial officer into finding probable cause by knowingly or recklessly including material misstatements in, or omitting material information from, the warrant affidavits." *Id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 148 (2d Cir. 2007)). "Where the defect in the affidavit is omissions, the ultimate inquiry . . . is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." *United States v. Lambus*, 897 F.3d 368, 397 (2d Cir. 2018) (internal quotation marks and alterations omitted).

Here, Plaintiff claims that Defendant "intentionally omitted from his affidavit, and concealed from the issuing magistrate, the fact that medical documentation in his possession disclosed that the plaintiff had just undergone serious abdominal surgery which made such

conduct physically impossible." (Pl.'s Opp. to Mot. for J. [Doc. # 32] at 5.) Plaintiff also alleges that Defendant "concealed the fact that the plaintiff had showed him that her fingernails were cut extremely short so that she could not have inflicted the scratches which were alleged." (Compl. ¶ 9). Additionally, Plaintiff alleges that Defendant falsely stated "that he 'could not clearly identify [Plaintiff's] face in the photo'" posted to Facebook and that he "falsely and maliciously stated that the [P]laintiff 'was fabricating an answer' to his questions." (Compl. ¶¶ 7, 10).

Notwithstanding these asserted deficiencies, the Court concludes that Defendant's arrest warrant application contained sufficient independent and lawful information to support a finding of probable cause to arrest Plaintiff on charges of disorderly conduct, in violation of Conn. Gen. Stat. § 53a-182, and assault in the third degree, in violation of § 53a-61.[1]

To begin, Defendant's arrest warrant application was supported by a sworn statement from Doe. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Loria v. Gorman*, 306 F.3d 1271, 1290 (2d Cir. 2002) (internal citation omitted). In his sworn statement, Doe claimed that he suffered a "very small laceration" on his face and "scratch marks" on his arm after Plaintiff "lunged at [him]," "grabbed [his] right arm and scratched him," and "pushed [him]." (Arrest Warrant Application at 2.) Defendant separately examined and photographed

---

[1] Under Connecticut law, a person is guilty of disorderly conduct when, among other things, that person "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person." Conn. Gen. Stat. § 53a-182.

A person is guilty of assault in the third degree when "(1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person." Conn. Gen. Stat. § 53a-61.

Doe's scratches, which "appeared consistent with Doe's statements." (*Id.* at 3.) Because Doe provided information indicating that, at a minimum, Plaintiff "annoy[ed] or interfer[ed]" with him under Conn. Gen. Stat. § 53a-182, and "cause[d him] physical injury" under § 53a-61, the application supported probable cause to arrest Plaintiff.

Plaintiff contends that Defendant had reason to doubt Doe's veracity because she provided medical documentation that she conclusorily asserts "prov[ed] that on the date in question she was recovering from serious abdominal surgery." (Compl. ¶ 8.) However, the fact of her recent abdominal surgery recovery does not negate a conclusion that Plaintiff was still physically capable of the minor criminal conduct claimed. In light of Doe's physical evidence of minor injury, it was not improper for Defendant to credit his statement and conclude there was probable cause to believe that Plaintiff scratched Doe, particularly given that she otherwise described herself as able to move in ordinary ways that day. (*See* Arrest Warrant Application at 3 (describing actions such as traveling to a restaurant, sitting on her backyard patio and bed, walking around her home, and having a "couple of drinks").) "Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong" for probable cause to exist. *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

The other asserted flaws with Defendant's application do not bear on the probable cause inquiry here. First, the length of Plaintiff's fingernails on the dates that she met with Defendant is not evidence of the length of her fingernails on the date she allegedly scratched Doe. Second, the

issue of whether Defendant was truthful in claiming that he could not identify Plaintiff's face was identifiable in the nude photographs does not materially impact the probable cause analysis, as the arrest warrant application contained Doe's admission that Plaintiff was the woman in the photographs. Third and finally, Defendant's statement that "[i]t seemed as if [Plaintiff] was fabricating an answer," (Arrest Warrant Application at 2), is not a statement of fact but rather a permissible opinion as to Plaintiff's credibility. *See Ricciuti*, 124 F.3d at 128 (explaining that officers may make credibility judgments in the course of making an arrest).

Because her arrest and prosecution were supported by probable cause, Plaintiff fails to state a claim for a violation of her Fourth Amendment rights.[2] Thus, the Court need not consider whether Defendant in entitled to qualified immunity on Plaintiff's Fourth Amendment claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated

---

[2] With regard to Plaintiff's malicious prosecution claim, Defendant offers an alternative argument that Plaintiff has failed to allege facts indicating that "the underlying criminal proceeding ended in a manner that affirmatively indicates [her] innocence." (Mot. for J. at 10 (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).) Defendant contends that the Superior Court proceeding "le[ft] the question of plaintiff's guilt or innocence unanswered," as the Judge terminated the case without commentary after the state prosecutor entered a *nolle prosequi*. (*Id.* at 12 (citing Superior Court Transcript at 2.))

As another court in this district has noted, Second Circuit authority is arguably "inconsistent" as to whether a *nolle prosequi* may serve as a favorable termination. *Butler v. Sampognaro*, No. 3:18-CV-00545 (JAM), 2019 WL 3716595, at *4 (D. Conn. Aug. 7, 2019). In *Lanning*, the Second Circuit ruled that the "favorable termination" requirement is not satisfied unless the plaintiff "adequately plead[s] that the termination of the prosecutions against him affirmatively indicated his innocence," as distinct from alleging a "dismissal on any number of procedural or jurisdictional grounds, all of which fail to affirmatively indicate innocence." *Lanning*, 908 F.3d at 28. But in *Spak v. Phillips*, 857 F.3d 458 (2d Cir. 2017), the Second Circuit observed that "as a general matter a *nolle prosequi* constitutes a 'favorable termination'" at least "for the purpose of determining when a Section 1983 claim accrues." *Id.* at 463.

Because this Court has found that probable cause existed for Plaintiff's prosecution, it need not address whether the state's entry of *nolle prosequi* qualified as a favorable termination.

were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

## B. Equal Protection

Plaintiff separately claims that Defendant unconstitutionally denied her equal protection of the law by discriminating against her on the basis of gender. *See* U.S. Const. Amend. XIV. She alleges that it was unlawful for Defendant to "pursue only the claim of the male against the female" when "confronted by a criminal complaint by the female plaintiff against a male and by a criminal complaint by that same male against the [female] plaintiff." (Opp. at 7.)

To assert an equal protection claim for selective enforcement, "a plaintiff must plausibly allege, among other things, that [s]he was treated differently from other similarly situated individuals." *Lanning*, 908 F.3d at 29. Individuals are "similarly situated" when they are alike "in all material respects." *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (internal quotation marks omitted); *see also Clay v. City of New York*, 2016 WL 5115497, at *6 (S.D.N.Y. Sept. 9, 2016) ("The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." (internal quotation marks omitted)).

Plaintiff's claim fails because she was not similarly situated to Doe in all material respects. Plaintiff reported to Defendant that Doe posted nude photographs of her on Facebook, while Doe reported that Plaintiff physically attacked him by scratching him. Because these alleged

crimes are fundamentally different in nature, Doe cannot serve as Plaintiff's comparator for the purposes of her claim of gender-based disparate treatment.[3]

Notwithstanding Plaintiff's distress over Defendant's handling of her complaint about the nude photographs, she has not adequately pleaded a violation of her Fourteenth Amendment rights. Because Plaintiff failed to state a claim that she was denied equal protection of law, the Court again need not address Defendant's invocation of qualified immunity.

### III. Conclusion

Accordingly, Defendant's Motion for Judgment on the Pleadings [Doc. # 30] is GRANTED. The clerk is directed to close the case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of September 2019.

---

[3] Plaintiff contends that the Court should apply the burden-shifting framework used in Title VII claims and so conclude that Plaintiff has established a *prima facie* case of gender discrimination. But even under that framework, Plaintiff still must allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted). She has not done so here.